IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

CATHIE L. BELL,

PLAINTIFF

vs

THE CITY OF NEW YORK, a municipal entity, NEW YORK CITY POLICE OFFICER JOSE PEREZ, individually and in his official capacity, NEW YORK CITY POLICE OFFICERS "JOHN DOES" and "SALLY ROWES", individually and in their official capacities, JOSEPH ESPOSITO, individually and in his official capacity as Chief of the New York City Police Department, RAYMOND KELLY, individually and in his official capacity as New York City Police Commissioner, JOHN J. COLGAN, individually and in his official capacity as Deputy Chief and Commanding Officer at the Pier # 57 Detention Facility, THOMAS GRAHAM, individually and in his official capacity as Commanding Officer of the New York City Police Department Disorders Control Unit, BRUCE SMOLKA, individually and in his official capacity as an Assistant Chief in the New York City Police Department and in Patrol Borough Manhattan South, TERRENCE MONAHAN, individually and in his official capacity as an Assistant Chief in the New York City Police Department, MICHAEL BLOOMBERG, Mayor of the City of New York, individually and in his official capacity, JAMES ESSIG, individually and in his official capacity as a Deputy Inspector in the New York City Police Department, and GERALD DIECKMANN, individually and in his official capacity as a Deputy Inspector in the New York City Police Department,

DEFENDANTS

05 Civ 3705/VM/DF
PLAINTIFF’S SECOND AMENDED COMPLAINT [JURY TRIAL]

## I. INTRODUCTION

1. This is an action against the Defendant parties,

individually and collectively, for the violation of the Plaintiff's federally guaranteed constitutional and civil rights and her rights as otherwise guaranteed under the laws and Constitution of the State of New York.

2. This case arises out of the arrest of the Plaintiff, Cathie L. Bell, on August 31, 2004 in the vicinity of Union Square East and Irving Place at or thereabouts 7:00 P.M and the subsequent preferral of charges associated therewith and, related thereto, the Plaintiff's detention and the terms and conditions of her detention and, in addition thereto, the utilization of unnecessary, unreasonable and excessive force in the form of excessive handcuffing; and, as well, the otherwise punitive and retaliatory conduct and actions against the Plaintiff because of her legitimate, reasonable, and protected speech activities.

3. The Plaintiff seeks monetary damages for her wrongful and unlawful false arrest and for her malicious prosecution and for her wrongful and unlawful detention and incarceration and for the wrongful preferral of charges and the wrongful utilization of unnecessary and unreasonable and excessive force and, otherwise, for the unreasonable and unlawful manner and fashion and conditions of the Plaintiff's detention and for the malicious abuse of criminal process and for the retaliatory and punitive conduct against the Plaintiff because of her reasonable and legitimate and protected speech activities and for the denial of medical care associated with her detention and imprisonment.

## II. JURISDICTION

4. Jurisdiction of this Court is invoked pursuant to and under 28 U.S.C. Sections 1331 and 1343 [3] and [4] in conjunction with the Civil Rights Act of 1871, 42 U.S.C. Section 1983, and the First, Fourth and Fourteenth Amendments to the United States Constitution.

5. Jurisdiction is also invoked pursuant to and under 28 U.S.C. Section 1367, entitled Supplemental Pendent Party and Pendent Claim Jurisdiction. The Plaintiff requests that the Court exercise its powers to invoke pendent claim and pendent party jurisdiction over and against the Defendant Officers in their individual capacities.

6. The State law claims have a common nucleus of operative fact with the federally based claims and they arise out of the same transaction and occurrence giving rise to the Plaintiff's federally based claims and causes of action.

7. The Plaintiff also invokes the jurisdiction of this Court in conjunction with the Declaratory Judgment Act, 28 U.S.C. Sections 2201, et seq., this being an action in which the Plaintiff, while seeking monetary damages, also seeks declaratory and injunctive relief if such is deemed necessary and desirable and in the interest of justice.

8. This is an action in which the Plaintiff seeks relief for the violation of her rights as guaranteed under the laws and Constitution of the United States and the laws and Constitution of

the State of New York.

III. PARTIES

9. The Plaintiff is an American citizen and resident of the City of New York, the County of New York, the State of New York.

10. The Defendant City of New York is a municipal entity existing pursuant to and under the laws and Constitution of the State of New York.

11. Defendant Michael Bloomberg is the Mayor of the City of New York.

12. Defendants Jose Perez, "John Does" and "Sally Rowes" are New York City Police Officers. Joseph Esposito is the Chief of the New York City Police Department. Raymond Kelly is the New York City Police Commissioner. Thomas Graham, Bruce Smolka, John Colgan, and Terrence Monahan and James Essig and Gerald Dieckmann are all high ranking New York City Police Department command officers who, along with Defendants Kelly and Esposito and Defendant Bloomberg, were responsible for the planning and oversight and implementation and sanctioning of the City of New York's Republican National Convention policing operations including the arrest and detention operations that were carried out and to which the Plaintiff was subjected. All of the Defendants are sued in their individual and official capacities. Notwithstanding the wrongful and illegal nature of their acts and conduct as hereinafter described, they were taken in and during the course of their duties and functions as employees and agents

of the City of New York and incidental to the otherwise lawful performance of the same.

IV. ALLEGATIONS

13. The Plaintiff is Cathie L. Bell.

14. The Plaintiff is fifty five years of age.

15. The Plaintiff's birth date is September 1, 1949.

16. The Plaintiff is single. The Plaintiff was previously married and is at present divorced. The Plaintiff has two daughters, both of whom are young adults and one of whom presently resides with her.

17. The Plaintiff resides at 144 West 16th Street, New York, New York 10011.

18. The Plaintiff is a college graduate. The Plaintiff obtained a B.A. degree in Business Administration from the New York Institute of Technology and an M.A. degree in education from New York University.

19. The Plaintiff is not currently employed. At the time of the incident the Plaintiff was employed as a real estate sales person. Previous thereto, the Plaintiff had been employed as a practice manager at the Westchester Family Dental Center in Yorktown Heights, New York from February 2000 to October 2002. Prior thereto, the Plaintiff was employed as a real estate sales person for Douglas Elliman, Inc. for the period 1999-2000 and as a real estate sales person for The Halstead Property Company from 1998-1999. From 1991 through 1998, the Plaintiff was employed as a

school teacher in the City School District of the City of New York [at P.S # 84 elementary school, Manhattan, from 1990-1992; and at Crossroads Middle School from 1992-1998].

20. The incident which gives rise to this litigation occurred on Tuesday, August 31, 2004 commencing at or about 7:00 P.M. in the vicinity of Union Square East and 16th Street.

21. The Plaintiff had arrived at the Union Square Park location to engage in reasonable and peaceful First Amendment protected speech demonstration activities related to the on going Republican National Convention meetings which were then on going in the City of New York and which Convention meetings had formally commenced and convened on Monday, August 30, 2004.

22. On August 31, 2004 the Plaintiff was standing on the sidewalk on East 16th Street between Union Square East and Irving Place. Many other people were, as well, on the sidewalk. There were people, on the sidewalk, who were just walking through the area as residents on the Street and, as well, as tourists in the neighborhood.

23. While the Plaintiff and others were so situated, New York City line Police Officers, under the authority and jurisdiction and authority and control of New York City Police Department command officers, behind to hem in the Plaintiff and others on the block known as East 16th Street between Union Square East and Irving Place.

24. The Plaintiff had simply been on the sidewalk observing

what was transpiring prior thereto. In other words, people were demonstrating in the area and otherwise observing what was transpiring in the area.

25. As the Police Officers were penning in the individuals, including the Plaintiff and others on the sidewalk, in the block on East 16th Street between Union Square East and Irving Place, some musicians, who had been playing instruments, were being arrested and their instruments strewn about and smashed by the Police.

26. The action of penning in the Plaintiff and others was accomplished by the use of a netting at one end of the block and a line of officers, in what appeared to be riot gear [with helmets and

27. The police moved in onto the sidewalk at both the east and west ends of the street.

28. The police directed the Plaintiff and others to keep moving, east toward Union Square Park East assuring the Plaintiff and others that, if they moved eastward toward Union Square Park East, that they would be permitted to leave.

29. The Plaintiff complied.

30. The police, who had moved in and completely penned in the the Plaintiff and the many others on the sidewalk, then directed the Plaintiff and others to sit down. The Plaintiff and others were advised that they would eventually be allowed to leave.

31. The police then began to arrest individuals including, as

noted previously, musicians who were in the block [while strewing about and smashing musical instruments belonging to the musicians].

32. Then and without any legal or other reasonable basis or justification for such, the police handcuffed the Plaintiff and many others then in the block.

33. The Plaintiff was “rear handcuffed” with plastic cuffs.

34. The Plaintiff and others were held in handcuffs at the location for approximately three [3] hours.

35. The Plaintiff and others were than loaded onto a City bus and transported to a facility known as Pier 57 where, before being taken into the Facility, they were held on the bus for approximately another hour.

36. The Plaintiff was taken from the bus at the Pier 57 facility and brought inside to a cage.

37. During this period the Plaintiff inquired of an Officer why he was not out fighting terrorism and the Officer, a male, responded, referring to the Plaintiff and other individuals who had been arrested and brought to the Pier 57 Facility, that “you are the terrorists”.

38. The Plaintiff and others were, then, taken into a razor wire cage where there were both males and females.

39. Subsequent thereto, the Plaintiff and others were separated into sex specific razor wired cages.

40. The Plaintiff was tearing from the hugely chemical like

atmosphere inside of the Pier # 57 Facility.

41. The cages contained a limited number of metal benches.

42. The cages were over-crowded.

43. Because of the over-crowding and the limited number of benches, persons were required to stand or to sit on the floor.

44. There were portable toilets.

45. The floor was covered with a diesel type of oil; and the floors were otherwise filthy.

46. There was a stench of strong chemicals in the air which caused the Plaintiff's eyes to burn and to tear.

47. By the time that the Plaintiff left the Pier 57 Facility, believed to be an old bus depot, she was covered and coated with filth and oil.

48. Many people asked for medical treatment and their requests for such were ignored.

49. Eventually, the Plaintiff and others were taken from the Pier 57 Facility and transported to a facility at 100 Centre Street where the Plaintiff was placed in a series of group cells until she was finally brought to Court for her arraignment before a judge.

50. At the 100 Centre Street Central Booking Facility, the Plaintiff and others shared over-crowded cells/. They were forced, because of the over-crowding, to lie on the floor. They were denied access to counsel and were otherwise subjected to fingerprinting and photographing.

51. The Plaintiff was given a slice of cheese and two pieces of bread. The only other thing that the Plaintiff had been given to eat, while she was in custody, was an apple at Pier 57.

52. Eventually, the Plaintiff appeared before a Judge and pled not guilty.

53. The Plaintiff was charged with two counts of disorderly conduct blocking traffic and refusing to disperse]; and one count of parading without a permit.

54. The Plaintiff appeared before the Court for arraignment on Thursday, September 2, 2004 at or about 4:00 P.M.

55. The Plaintiff was required to appear in Court on several subsequent occasions. At one such appearance, the parading without a permit charge was dismissed [as facially insufficient]. At a subsequent Court appearance the District Attorney dropped the disorderly conduct charge based on the claim that the Plaintiff had failed to disperse.

56. At a final appearance and after some testimony was taken from Defendant Perez, the Court dismissed the final charge [blocking traffic] with what is believed a trial order of dismissal.

57. When the Plaintiff left the Pier 57 facility, she was suffering from welts on her wrist and a severely pained left shoulder both of which conditions were the result of the time excessive read handcuffing. The Plaintiff sought relief from the time excessive rear handcuffing but her requests for such were

ignored.

58. Furthermore, the Plaintiff was suffering from a rash on both her arms, the result of the oil substance on the floor and/or the chemical toxic environment in which she was detained while at Pier 57.

59. The shoulder pain and rash persisted for some period of time after the Plaintiff was released from custody and for many months the Plaintiff suffered intestinal pain, weight loss, and a persistent state of diarrhea.

60. The Plaintiff was unable to work for many months because of the incident as described and the conditions associated therewith.

61. The conditions of the Plaintiff's confinement, individually and collectively, were unreasonable, unnecessary, and excessive terms and conditions of her arrest and seizure and detention and they placed the Plaintiff at risk to her health, welfare and well being.

62. There was no probable cause or other reasonable basis for the Plaintiff's arrest, detention, and imprisonment at the time of her arraignment.

63. The Plaintiff was falsely arrested, detained, and imprisoned in retaliation for the legitimate exercise of her First Amendment protected speech activities.

64. The Plaintiff was arrested and imprisoned for the collateral objective of punishing and retaliating against her for

the exercise of her First Amendment protected speech activity.

65. The Plaintiff was subjected, by the nature and extent of her handcuffing, to excessive, unreasonable, and unnecessary force.

66. The Plaintiff was subjected to reckless and deliberately indifferent medical treatment while she was detained and imprisonment.

67. The Plaintiff was otherwise subjected to unreasonable, unnecessary, and excessive detention when, having been arrested, she was not released with a Desk Appearance Ticket or Summons, for which she was qualified and qualifiable, but rather detained and put through the system, the latter of which was not only unnecessary, unreasonable, and excessive, but, as well, punitive and designed to retaliate against the Plaintiff for the exercise of her First Amendment protected speech activity.

68. The Plaintiff was otherwise subjected to unreasonable, unnecessary, excessive terms and conditions of detention and imprisonment and seizure by, among other things, unlawful and unnecessary and unreasonable fingerprinting, failure to provide holding cells which were not over-crowded and otherwise not environmentally toxic [the holding cells being vastly over-crowded and defined by chemical and toxic conditions that were harmful to the Plaintiff's welfare, health, and well being].

69. The actions and conduct taken against the Plaintiff were the result of and were propelled by the policies, practices and

customs of the City of New York.

70. In expectation of demonstrations to be conducted by individuals at the Republican National Convention, the Defendant City of New York adopted policies, practices and customs which propelled arrests where there was otherwise no basis for arrest and, then, to excessively and unnecessary and punitively detain the individuals, rather than to release individuals who were qualified and qualifiable for release, after arrest, with Desk Appearance Tickets or Summonses in a timely manner and fashion [thereby, for all intent and purposes unnecessarily imprisoning the individuals], and to subject them to excessive, unnecessary, and unreasonably handcuffing and fingerprinting, and, then, to imprison them in hostile, unreasonable, and unnecessary and health detrimental conditions.

71. The policies and practices and customs adopted by the City of New York and implemented by its agents and employees during the Republican National Convention, propelled officers to act outside of the bounds of constitutionally prescribed conduct and to push the envelope thereby subjecting the Plaintiff, among others, to false arrest, malicious prosecution, excessive and unreasonable, and unnecessary force in the form of excessive handcuffing, unnecessary and unlawful and unreasonable fingerprinting and photographing, the denial of adequate medical treatment, excessive detention, and detention and imprisonment in hostile, health detrimental and welfare detrimental conditions.

72. The Defendant City's policies, practices, actions, and conduct propelled thereby were predicated on the "ends justifies the means" philosophy propelling the goal of keeping "order" at all costs even the cost of the knowing violation of an individual's constitutional rights. The policies, practices, customs and the actions and conduct propelled thereby were deemed a "cost of doing business", that is: in order to maintain order, the cost of violation the constitutional rights of individuals was permitted and authorized and allowed to take place.

73. The Plaintiff was subjected to false arrest, malicious prosecution, assault and battery, excessive detention, excessive handcuffing, unreasonable fingerprinting and photographing, health risk conditions of detention, and malicious abuse of criminal process, and retaliation for the exercise of her State and federal constitutionally protected speech activity.

74. The actions and conduct taken against the Plaintiff were taken by agents and employees of the City of New York who were acting under color of law and who were otherwise "state actors". While their conduct and actions were wrongful, unconstitutional, and otherwise unlawful they were taken by the City's agents and employees in the course of their respective duties and functions and incidental to the otherwise lawful performance of the same. They were taken pursuant to and under the authority and responsibility of Defendants Dieckmann and Essig, each of whom, it is believed, was an “incident commander” at the location when and

where the Plaintiff was arrested and each of whom it is believed was the commanding officer in charge of the policing operation at the location when and where the Plaintiff and others were arrested.

75. The actions, conduct, policies, practices, and customs described herein violated the Plaintiff's rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. Section 1983.

76. The actions, conduct, policies, practices, and customs violated the Plaintiff's rights under the laws and Constitution of the State of New York including false arrest, malicious abuse of criminal process, assault, battery, excessive detention, excessive handcuffing, unreasonable and unnecessary fingerprinting and photographing, and retaliation for her exercise of her State constitutionally protected speech activity.

77. The actions, conduct, policies, practices, and customs were negligent and were otherwise the proximate cause of the injuries and damages suffered by the Plaintiff.

78. The Plaintiff suffered physical pain, anxiety, embarrassment, loss of liberty, emotional distress, psychological trauma, mental anguish.

79. The Plaintiff continues to suffer residual injuries and damages as a consequence of the actions, conduct, policies, practices, and customs as described and the violation of her

rights associated therewith.

80. It is believed that there were New York City Police Officers [both line Officers and command Officers] who were part and parcel of the actions and conduct taken against the Plaintiff during the course of the entire transaction which describes the incident herein and component parts thereof including Command Officers and policy making Officers all or some of whom authorized and sanctioned the conduct practiced and taken against the Plaintiff and which propelled the actions and conduct, in the component parts thereof and their totality, taken against the Plaintiff.

81. The actions and conduct of the New York City Police Officers as described above were propelled by the policies and practices of the New York City Police Department with respect to the planning and oversight of the Republican National Convention.

82. In that regard and respect, the City of New York recklessly and with deliberate indifference to the First Amendment rights of people to peaceably assemble and engage in protected speech activity at the Republican National Convention unlawful and unconstitutional actions against innocent law abiding by-standers, who were observing police actions and/or were simply in the vicinity of police action including the arrest of those individuals and how they were treated when arrested and thereafter including the use of unnecessary and unreasonable force and including unnecessary and excessive and unreasonable detention

and, associated therewith, unreasonable and unnecessary terms and conditions of confinement [for example unnecessary and unreasonable and excessive handcuffing, unnecessary and unreasonable and unlawful fingerprinting and photographing, denial of access to adequate bathrooms, denial of access to counsel, denial of access to nourishment and medication and subjecting individuals to toxic detention facilities].

83. The policies and practices created a situation where people, who were otherwise doing nothing impermissible, were subjected to arrest and denied their right to freely and lawfully engage in a peaceful assembly and demonstration and to otherwise be on the sidewalk doing nothing other than observing actions being taken by Police Officers toward other individuals and/or just being present.

84. The actions and conduct and policies and practices were otherwise negligent and the proximate cause of the Plaintiff's injuries.

85. The Plaintiff has no other adequate remedy at law but for the institution of this litigation.

FIRST CAUSE OF ACTION

86. The Plaintiff reiterates Paragraph #'s 1 through 85 and incorporates such by reference herein.

87. The Plaintiff was falsely arrested and falsely imprisoned in violation of the Plaintiff's rights under the Civil Rights Act of 1871, 42 U.S.C. Section 1983, and Fourth and Fourteenth

Amendments to the United States Constitution.

88. The Plaintiff suffered injuries and damages.

SECOND CAUSE OF ACTION

89. The Plaintiff reiterates Paragraph #'s 1 through 88 and incorporates such by reference herein.

90. The Plaintiff was, inter alia, falsely arrested and falsely imprisoned in violation of the laws and Constitution of the State of New York.

91. The Plaintiff suffered injuries and damages.

THIRD CAUSE OF ACTION

92. The Plaintiff reiterates Paragraph #'s 1 through 91 and incorporates such by reference herein.

93. The Plaintiff was subjected to unnecessary and unreasonable and excessive force in the form of unnecessary, unreasonable, and excessive handcuffing in violation of her rights under the Fourth and Fourteenth Amendments to the United States Constitution.

94. The Plaintiff suffered injuries and damage.

FOURTH CAUSE OF ACTION

95. The Plaintiff reiterates Paragraph #'s 1 through 94 and incorporates such by reference herein.

96. The Plaintiff was subjected to assault and battery in the form of unnecessary and excessive and unreasonable handcuffing in violation of her rights under the laws and Constitution of the State of New York.

97. The Plaintiff suffered injuries and damages.

FIFTH CAUSE OF ACTION

98. The Plaintiff reiterates Paragraph #'s 1 through 97 and incorporates such by reference herein.

99. The Plaintiff was subjected to unreasonable, unnecessary, and excessive conditions of her seizure and detention in violation of her rights under the Fourth and Fourteenth Amendments to the United States Constitution.

100. The Plaintiff suffered injuries and damages.

SIXTH CAUSE OF ACTION

101. The Plaintiff reiterates Paragraph #'s 1 through 100 and incorporates such by reference herein.

102. The Plaintiff was subjected to unreasonable, unnecessary, and excessive conditions of her seizure and detention in violation of her rights under the laws and Constitution of the State of New York.

103. The Plaintiff suffered injuries and damages.

SEVENTH CAUSE OF ACTION

104. The Plaintiff reiterates Paragraph # s 1 through 103 and incorporates such by reference herein.

105. The Plaintiff was subjected to excessive, unreasonable, and unnecessary detention in violation of her rights under the Fourth and Fourteenth Amendments to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. Section 1983.

106. The Plaintiff suffered injuries and damages.

EIGHTH CAUSE OF ACTION

107. The Plaintiff reiterates Paragraph #'s 1 through 106 and incorporates such by reference herein.

108. The Plaintiff was subjected to excessive, unreasonable, and unnecessary detention in violation of her rights under the laws and Constitution of the State of New York.

109. The Plaintiff suffered injuries and damages.

NINTH CAUSE OF ACTION

110. The Plaintiff reiterates Paragraph #'s 1 through 109 and incorporates such by reference herein.

111. The Plaintiff was denied adequate medical care while in custody in violation of her rights under the Fourth and Fourteenth Amendments to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. Section 1983.

112. The Plaintiff suffered injuries and damages.

TENTH CAUSE OF ACTION

113. The Plaintiff reiterates Paragraph #'s 1 through 112 and incorporates such by reference herein.

114. The Plaintiff was denied adequate medical care while in custody in violation of her rights under the laws and Constitution of the State of New York.

115. The Plaintiff suffered injuries and damages.

ELEVENTH CAUSE OF ACTION

116. The Plaintiff reiterates Paragraph #'s 1 through 115 and incorporates such by reference herein.

117. The Plaintiff was subjected to medical and health impairing facilities and conditions associated therewith in violation of her rights under the Fourth and Fourteenth Amendments to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. Section 1983

118. The Plaintiff suffered injuries and damages.

TWELFTH CAUSE OF ACTION

119. The Plaintiff reiterates Paragraph #'s 1 through 118 and incorporates such by reference herein.

120. The Plaintiff was subjected to medical and health impairing facilities and conditions associated therewith in violation of her rights under the laws and Constitution of the State of New York.

121. The Plaintiff suffered injuries and damages.

THIRTEENTH CAUSE OF ACTION

122. The Plaintiff reiterates Paragraph #'s 1 through 121 and incorporates such by reference herein.

123. The actions and conduct were taken herein for the collateral purpose of punishing the Plaintiff for the exercise of her First Amendment protected speech activities in violation of the Plaintiff's rights under the First Amendment to the United States Constitution.

124. The Plaintiff suffered injuries and damages.

FOURTEENTH CAUSE OF ACTION

125. The Plaintiff reiterates Paragraph #'s 1 through 124 and

incorporates such by reference herein.

126. The actions and conduct were taken herein for the collateral purpose of punishing the Plaintiff for the exercise of her speech activities in violation of the laws and Constitution of the State of New York.

127. The Plaintiff suffered injuries and damages.

FIFTEENTH CAUSE OF ACTION

128. The Plaintiff reiterates Paragraph #'s 1 through 127 and incorporates such by reference herein.

129. The actions and conduct of the Defendant parties were negligent and the proximate cause of the injuries and damages that the Plaintiff suffered.

130. The Plaintiff suffered injuries and damages.

SIXTEENTH CAUSE OF ACTION

131. The Plaintiff reiterates Paragraph #'s 1 through 130 and incorporates such by reference herein.

132. The Defendant City's policies and practices, which propelled the actions and conduct herein, including the policies related to the law enforcement and policing oversight and administration of the 2004 RNC and the demonstrations and marches associated therewith and including the handcuffing policies and practices and including the conditions of detention oversight and administration policies and practices, violated the Plaintiff's rights as guaranteed under the First, Fourth and Fourteenth Amendments to the United States Constitution.

133. The Plaintiff suffered injuries and damages.

SEVENTEENTH CAUSE OF ACTION

134. The Plaintiff reiterates Paragraph #'s 1 through 133 and incorporates such by reference herein.

135. Independent of the negligence claims against the Defendant City and independent of the Monell based claims against the Defendant City, the Defendant City is responsible, under State law and based on State law jurisdiction and pursuant to State law and under the doctrine of respondeat superior, for the wrongful and unlawful acts and conduct of its agents and employees.

136. The Plaintiff suffered injuries and damages.

EIGHTEENTH CAUSE OF ACTION

137. The Plaintiff reiterates Paragraph #'s 1 through 136 and incorporates such by reference herein.

138. The actions and conduct of the Command Officers knowingly and/or recklessly and with deliberate indifference to the rights of the Plaintiff sanctioned and ratified the wrongful, unlawful, and unconstitutional conduct and actions of the subordinates officers in violation of the Plaintiff's rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution and, as well, the laws and Constitution of the State of New York.

139. The Plaintiff suffered injuries and damages.

NINETEENTH CAUSE OF ACTION

140. The Plaintiff reiterates Paragraph #’s 1 through 139 and

incorporates such by reference herein.

141. The Plaintiff was subjected to malicious prosecution in violation of her rights under the Fourth Amendment to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. Section 1983.

142. The Plaintiff suffered injuries and damages.

TWENTIEH CAUSE OF ACTION

143. The Plaintiff reiterates Paragraph #'s 1 through 142 and incorporates such by reference herein.

144. The Plaintiff was subjected to malicious prosecution in violation of his rights under the laws and Constitution of the State of New York.

145. The Plaintiff suffered injuries and damages.

WHEREFORE and in light of the foregoing, it is respectfully requested that the Court assume jurisdiction herein and thereafter:

[a] Assume pendent party and pendent claim jurisdiction.

[b] Enter appropriate declaratory and injunctive relief.

[c] Award appropriate compensatory and punitive damages in an amount to be defined and determined.

[d] Award reasonable costs and attorney's fees.

[e] Award such other and further relief as the Court deems appropriate and just.

[f] Convene and empanel a jury.

DATED: New York, New York
July 17, 2005

Respectfully submitted,

______________________________
JAMES I. MEYERSON [JM 4304]
396 Broadway-Suite # 601
New York, New York 10013
[212] 226-3310
ATTORNEY FOR PLAINTIFF
BY:______________________